879 So.2d 486 (2004)
Deborah McDONALD, Appellant
v.
I.C. ISAACS NEWTON COMPANY and Liberty Mutual Insurance Company, Appellees.
No. 2002-WC-02084-COA.
Court of Appeals of Mississippi.
March 2, 2004.
Rehearing Denied May 25, 2004.
Certiorari Denied August 5, 2004.
*487 Lance L. Stevens, Jackson, attorney for appellant.
H. Byron Carter, III, Gulfport, attorney for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. Deborah Ann McDonald has appealed an order of the Circuit Court of Newton County that affirmed, in total, an order of the Workers' Compensation Commission. The Commission found that McDonald had sustained compensable injuries to both of her upper extremities which entitled her fifty weeks of permanent partial disability benefits for the 25% loss of use of her left arm, and 100 weeks of permanent partial disability benefits for the 50% loss of use of her right arm. McDonald contends that she is entitled to 400 weeks of compensation for the total industrial loss of use of both arms plus penalties, minus permanent partial disability benefits paid. In a footnote to her appellate brief McDonald explains that while she could legitimately make a claim for 450 weeks of compensation for permanent and total disability benefits, she has chosen not to "push the envelope" and has therefore limited her claim to 400 weeks of compensation for total industrial loss of use of both arms.

FACTS
¶ 2. At the time of the hearing of this matter on July 5, 2001, McDonald was forty years old and had a high school education but no additional education or vocational training beyond that. McDonald testified that she began work as a seamstress for I.C. Isaacs Newton Company in 1982 or 1983 in a "back pocket tacking" job which lasted approximately eight years. She left the Newton Company to go to work for Bon-Home Shirt Factory at a job which lasted about a year. McDonald returned to the Newton Company in 1993 to a "hemming" job. She was in the performance of her hemming job when the injury occurred.
¶ 3. On or about September 17, 1996, McDonald was "pulling on pants when she felt a pulling sensation in her wrists." She received medical treatment and eventually underwent surgery on one wrist. After about six weeks McDonald attempted to return to her hemming job, but was unable to perform the duties of the job. She was then assigned to a lighter duty job as a "reece." Because of the repetitive nature of the reece job McDonald was unable to perform those duties. She also experienced great difficulty in performing a subsequent job to which she was assigned. However, McDonald worked at her last assigned position until on or about April *488 21, 1998, when she underwent surgery to her other wrist. The Newton Company closed its plant sometime shortly thereafter.
¶ 4. Prior to McDonald's injury as well as subsequent to her injury she worked for her church on a part-time basis as a custodian. McDonald testified that she performed a full range of custodial duties at the church prior to her first wrist surgery but said that since the surgery the church has been significantly accommodating to her physical limitations. She is no longer required to vacuum and is allowed discretionary breaks to reduce the stress on her physically.
¶ 5. McDonald testified that she sought employment with numerous employers in the Newton County area. She also testified that she was not offered a job with any of the other Newton Company plants after her plant closed, but stated that at any rate she would not be able to perform the duties of her old job. It was also her testimony that since her last surgery she has very little gripping strength and her hands go numb causing her to drop things. McDonald admitted that, on the advice of counsel, she refused the assistance of the Newton Company's vocational expert in locating a job.
¶ 6. Jennifer Oubre was called as an expert witness by the Newton Company. Oubre admitted that McDonald probably could not return to her assembly line job at the Newton Company; however, it was her opinion that McDonald is employable.
¶ 7. McDonald's treating physician, Dr. James Green, diagnosed her with carpal tunnel syndrome of the right wrist and early carpal tunnel syndrome of the left wrist. Carpal tunnel surgery was eventually performed on both wrists. McDonald was assigned a 5% impairment to the left wrist with limitations of no repetitive use of both hands over an extended period of time.
¶ 8. Another of McDonald's treating physicians, Dr. Sheila Lindley, referred McDonald to the St. Dominic Memorial Hospital Hand Management Center for a functional capacity evaluation. McDonald was assigned a 10% impairment of the right arm and a 0% impairment of the left arm. She was restricted to "[n]o overhead work of any nature including occasional overhead, no lifting greater than 15 pounds occasionally, no greater than 20 pounds of pulling or pushing, and no bilaterally repetitive motion." McDonald was also diagnosed as having significant problems with cold exposure in both hands.
¶ 9. The administrative law judge found that the preponderance of the evidence showed that McDonald had suffered a medical impairment beyond the medical impairment ratings assigned. It was the administrative law judge's finding that McDonald had suffered a 25% loss of industrial use of the left upper extremity and a 50% loss of industrial use of her right upper extremity. The administrative law judge further found that McDonald was entitled to penalties and interest as provided by Mississippi Code Annotated Section 71-3-37 and reasonable and necessary medical services and supplies as the nature of her injury and the process of her recovery may require, consistent with Mississippi Code Annotated Section 71-3-15 and the Medical Fee Schedule.
¶ 10. The administrative law judge's order awarded benefits for a period of 37.5 weeks as compensation for disability to McDonald's left arm and 75 weeks as compensation for disability to her right arm. The Full Commission found that "because the maximum compensation payable for total loss of use of an arm is 200 weeks, we hereby amend this provision in the Order to provide that Deborah McDonald is entitled *489 to 50 weeks of permanent partial disability benefits for the 25% loss of use of her left arm, and 100 weeks of permanent partial disability benefits for the 50% loss of use of her right arm."

ANALYSIS
¶ 11. The standard of review in worker's compensation cases is limited by the substantial evidence test. This Court will not reverse the decision of the Workers' Compensation Commission unless it finds that the decision is clearly erroneous and contrary to the overwhelming weight of the evidence. Smith v. B.C. Rogers Processors, Inc., 743 So.2d 997, 1002 (¶ 13) (Miss.Ct.App.1999).
¶ 12. McDonald contends that on the basis of the criteria set forth in Meridian Professional Baseball Club v. Jensen, 828 So.2d 740 (Miss.2002), the Commission was required to find that she has suffered a total industrial loss of use to each arm. In Meridian Baseball, Blair Jensen, a twenty-one-year-old high school graduate suffered an injury to his left arm while employed as a professional baseball player for the Meridian Brakemen. Jensen had worked as a sports coach, construction worker and produce packer between baseball seasons. His average weekly wage at the time of the injury was $187.50. After the injury Jensen worked a variety of part-time jobs while going to school. By the time of his hearing for workers' compensation, he was working full time at a medical clinic and making approximately $320 a week, while continuing his education at Fresno State University. Id. at (¶ 2).
¶ 13. Even though the opinion of the medical experts was that Jensen's arm was only 7% functionally impaired after maximum recovery, Jensen sought workers' compensation benefits for full occupational loss of use of his left arm, because the medical evidence also indicated that he would be unable to return to "his usual profession as a baseball catcher" and was permanently restricted from work requiring repetitive overhead lifting. Id. at (¶ 3).
¶ 14. The administrative law judge found that even though Jensen could no longer play professional baseball he earned as much or more working part time while going to college than he did as a baseball player and awarded benefits for a 25% occupational loss of use of his left arm. Id. at (¶ 4). The Full Commission affirmed, and Jensen appealed. The circuit court ruled in Jensen's favor finding that total loss of use to a scheduled member occurs when a claimant is unable to perform the "substantial acts of his usual employment" and that "usual employment" refers to a claimant's job at the time of injury. Id. at (¶ 5). This Court reversed the circuit court's judgment and reinstated the order of the Commission finding that, while the Commission must look to the evidence to determine if the claimant could still perform the substantial acts of his usual employment, the phrase "usual employment" has a broader meaning than the job held by the claimant at the time of injury and that Jensen's recent jobs, activities and education constituted substantial evidence to support the Commission's finding of less than a total loss of use. Id. at (¶ 6).
¶ 15. On grant of certiorari, the Mississippi Supreme Court, in affirming this Court, found that Jensen was not entitled to full occupational loss for injury to his arm, as he suffered no loss of wage-earning capacity. Nevertheless, in reaching this conclusion the court held that where a permanent partial disability renders a worker unable to continue in the position held at the time of injury, such inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant's ability to earn *490 the same wages which the claimant was receiving at the time of injury. Id. at (¶ 21). The court held that the presumption arises when the claimant establishes that he has made a reasonable, albeit unsuccessful, effort to find work in his usual employment, or presents other proof of his inability to perform the substantial acts of his usual employment. Id. Rebuttal can be shown by all the evidence concerning wage-earning capacity, including the claimant's education and training, age, continuance of pain, and any other related circumstances. Id.
¶ 16. In the case at bar, the Commission found that the substantial evidence supported that McDonald suffered a permanent partial disability to each of her arms which rendered her unable to continue in the position she held at the time of her injury. On the basis of Meridian Baseball, such inability created a rebuttable presumption of total occupational loss of the members, subject to other proof of the claimant's ability to earn the same wages which the claimant was receiving at the time of injury. Id. at (¶ 21). The question this Court must answer is whether the Newton Company successfully rebutted the presumption of total occupational loss of the members with proof of McDonald's ability to earn the same wages which she was receiving at the time of injury.
¶ 17. The proof was that all of the jobs McDonald had held prior to her injury were assembly line/production tasks which required the repetitive use of her hands and arms for grasping and lifting. As a result of her injury, McDonald is forever barred from the performance of this kind of activity. At the time of the hearing, McDonald was forty years old with only a high school education. Her only employment at that time was as a part-time church custodian which paid wages that were far less than what she earned in her previous job.
¶ 18. At the hearing before the administrative law judge, the Newton Company offered no proof of its own that McDonald possessed the ability to earn the same wages she was receiving at the time of injury to rebut the presumption of total occupational loss of use of her upper extremities. In its appellate brief, the Newton Company alleged that:
Ms. McDonald was only 37 at the time she reached MMI. She has a high school degree, which is better than most Mississippians. She has a driver's licence and a vehicle. She has worked as a seamstress performing many different tasks and not strictly the hemming job she was performing in September of 1996. She has worked as a custodian and supervised others in that position. Therefore, Mr. [sic] McDonald has many attributes and skills that are transferable to other employment.
¶ 19. The sum of these allegations do not rebut, in any meaningful way, the presumption that McDonald, as a result of the industrial loss of use of her arms, no longer possesses the ability to earn the same wages that she was receiving at the time of her injury. In her present condition, McDonald can best be described as a manual laborer who no longer has the ability to labor. She is permanently and totally disabled in the use of her upper extremities to earn a living. The Commission failed to acknowledge the implications of such a disability in a person in McDonald's circumstances in its award of permanent partial disability benefits rather than permanent total occupational disability benefits.
¶ 20. In this regard, the Mississippi Supreme Court has held that "if a claimant is permanently and totally occupationally disabled, he should be entitled to compensation for a permanent total occupational *491 disability, not a permanent partial disability. . . . To say that a person with a loss or loss of use of a scheduled member has but a permanent partial disability fails to take account of loss of wage earning capacity." Smith v. Jackson Const. Co., 607 So.2d 1119, 1127 (Miss.1992). The court went on to hold that permanent partial disability benefits paid under "Section 71-3-17(c), including its familiar schedule, proceeds on the faith that the worker will be able to resume the same or other employment after he adapts to his disability. If after this period of adjustment the worker remains permanently and totally occupationally disabled, he by definition does not have a permanent partial disability and so the schedule found in Section 71-3-17(c) cannot control." Id. at 1128. The court found that "[s]uch a person should of right receive permanent and total disability compensation. Any other result is a travesty of justice which denies an employee injured in the course of his employment the compensation he is lawfully entitled to receive." Id.
¶ 21. "Where an employee suffers an injury covered by the schedule in Section 71-3-17(c) and where that injury results in a permanent loss of wage earning capacity within Section 71-3-17(a), the latter section controls exclusively and the employee is not limited to the number of weeks of compensation prescribed in Section 71-3-17(c)'s schedule." Id.
¶ 22. The substantial evidence showed that McDonald, a forty-year-old high school graduate, unsuccessfully sought employment, had no job skills other than performing manual labor, and was severely limited in performing manual labor due to her injury. The Commission's award of compensation for a permanent partial loss of scheduled members took no account of McDonald's loss of wage earning capacity. "If a claimant is unable to earn wages despite only a loss or loss of use of a scheduled member, then the claimant is permanently and totally disabled. Compensation for a permanent partial disability for loss or loss of use of a scheduled member should only be applicable when a claimant has not sustained a permanent and total occupational disability." Id.
¶ 23. The dissent concedes that under the holding of Meridian Baseball the presumption arose that McDonald could no longer work at the position she held when she was injured. It claims, however, that the presumption was overcome by evidence that there were other positions available for which McDonald was suitable; therefore, this Court should affirm the Commission's decision. As stated previously in this opinion, the rebuttable presumption of total occupational loss of members created by Meridian Baseball must be overcome by proof of the claimant's ability to earn the same wages which the claimant was receiving at the time of injury. Neither the Commission, nor the Newton Company, nor the dissenting opinion offered any proof of that. In the absence of any proof that McDonald has the ability to earn the same wages that she was receiving at the time of her injury, she is entitled to permanent and total disability compensation.
¶ 24. This Court finds that McDonald sustained a total loss of wage earning capacity and is entitled to compensation pursuant to Mississippi Code Annotated Section 71-3-17(a). The judgment of the circuit court is reversed and the cause is remanded to the Commission for proceedings consistent with this opinion.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY IS REVERSED AND THIS CAUSE IS REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION *492 FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, P.J., BRIDGES, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND THOMAS, J.
SOUTHWICK, P.J., Dissenting:
¶ 26. The majority concludes that McDonald has sustained a total loss of wage earning capacity. It rejects the Workers' Compensation Commission's fact-finding that the claimant was limited but not totally disabled by injuries to her wrists. Since I believe that there was substantial evidence upon which the Commission could rely to award McDonald benefits based on a partial loss of use of a scheduled member, I respectfully dissent.
¶ 27. Of central importance, the majority argues that unless evidence is introduced that the claimant can earn the same wages as before the injury, she is considered totally and permanently disabled. Just to state the proposition is to highlight its error. With respect, the workers' compensation statutes and the caselaw do not create such an imbalance between claimants and employers. If the evidence reveals that the claimant cannot earn the level of wages as before but may still be gainfully employed despite a permanent injury to a scheduled member, then there is some permanent disability but it is not total.
¶ 28. A hearing was conducted before an administrative law judge. Offered into evidence were the medical records and affidavits of Dr. Shelia Lindley, Dr. James Green and St. Dominic-Jackson Memorial Hospital. The judge heard testimony from Jennifer Oubre who qualified as an expert witness in vocational rehabilitation. Oubre testified that while McDonald was limited in the type of work she could do, she was not unemployable. During the hearing, Oubre testified that based on the job search she conducted, the following job titles were possibilities for McDonald: front desk clerk positions; security guards; cashier positions; greeters; housekeepers; and switchboard operators. Jobs considered as non-repetitive light positions were available. These positions were available within thirty miles of McDonald's home. Oubre testified that in her opinion McDonald, with her restrictions, qualified for jobs. This opinion was based on the qualifications of the physicians.
¶ 29. These positions certainly keep the principles of total loss of wage earning capacity from being applied. The majority improperly invokes the rule that total incapacity that arises from injury to scheduled members may still lead to an award of benefits for total, permanent disability. Smith v. Jackson Const. Co., 607 So.2d 1119, 1127 (Miss.1992). In fact, the majority grants benefits that the claimant never sought. As pointed out in McDonald's brief, the claimant has always sought benefits specifically based on the scheduled member scheme and consciously did not "push the envelope" (the attorney's phrase) on permanent, total disability. I find that the claimant's attorney was correct and the majority is in error.
¶ 30. The only viable issue on appeal is not total disability, but whether there is under scheduled member law, an inability to perform the substantial acts of the usual employment. The Commission awarded 50 weeks of permanent partial disability benefits for the 25% loss of use of her left arm and 100 weeks of permanent partial disability benefits for the 50% loss of use *493 to her right arm was correct. As a minimum, a claimant always will receive benefits for a scheduled member injury based on the percentage of loss of medical loss. The benefits awarded by the Commission are greater than the medical limitation percentages, and that is acceptable when there is evidence that the injuries have caused a greater impact on the worker's ability to earn a living.
¶ 31. In a recent decision, the Supreme Court reiterated that the issue in a scheduled member case when a claimant is seeking benefits for greater than the medical limitations, is whether the injury "prevents the worker from performing the substantial acts of his usual employment." Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 746 (Miss.2002). In Jensen, the court declared that the job the claimant was performing at the time of the injury was not "necessarily the `usual employment.'" Id. at 747-48. Instead, the usual employment is "broader in scope than the job held at the time of injury," and includes "jobs in which the claimant has past experience, jobs requiring similar skills," or other jobs for which the worker is suited. Id. at 747.
¶ 32. Because of Jensen, there is a rebuttable presumption that arises once a claimant with a scheduled member injury presents evidence that he or she is "unable to continue in the position held at the time of injury. . . ." The presumption is of a "total occupational loss of the member, subject to other proof of the claimant's ability to earn the same wages which the claimant was receiving at the time of injury." Id.
¶ 33. The presumption arose since McDonald could no longer work at the position that she held when she was injured. Evidence of other available positions was offered to rebut. According to Jensen, these other positions are relevant to rebut the presumption if they are "jobs in which the claimant has past experience, jobs requiring similar skills, or jobs for which the worker is otherwise suited by his age, education, experience, and any other relevant factual criteria." Id.
¶ 34. I find no error in the Commission's relying on the evidence that was received as rebutting the presumption. There was substantial evidence of other positions for which McDonald was suitable. She received an award under scheduled member principles that was substantially higher than her medical limitations. We should affirm.
McMILLIN, C.J., AND THOMAS, J., JOIN THIS SEPARATE WRITTEN OPINION.