CARLTON, J.,
for the Court.
¶ 1. Martha Lott appeals the judgment of the Montgomery County Circuit Court, which affirmed the decision of the Mississippi Workers’ Compensation Commission (Commission), awarding her permanent partial disability benefits for the 100% loss of use of her aim.
FACTS
¶ 2. On May 15, 2003, Lott sustained an injury to her right shoulder while assisting a patient at the Kilmichael Group Home, operated by Hudspeth Center. Lott filed the appropriate paperwork to report her injury and sought treatment from Dr. Asa Bennett, an orthopedic specialist. Dr. Bennett diagnosed Lott as having a torn rotator cuff, and he performed surgery to repair the injury on October 6, 2003. He also prescribed physical therapy for Lott. Dr. Bennett released Lott at maximum medical improvement on June 29, 2004, without any work restrictions. Dr. Bennett assessed Lott’s disability as a 10% impairment to her right upper extremity. Lott was not able to return to her job at the Kilmichael Group Home because her employment was terminated during her recovery from her injury.
¶ 3. After being discharged by Dr. Bennett, Lott filed her petition to controvert, claiming that she was entitled to permanent disability benefits in excess of the anatomical rating assigned by Dr. Bennett. Lott was then referred, by her attorney, to Kay Cannon for a functional capacity evaluation (FCE). After the FCE, Cannon found that Lott could return to work at a sedentary-light physical demand level. Cannon also noted that Lott was limited by “very poor body mechanics” and was self-limited by her pain.
¶ 4. Lott was then sent to Dr. David Collipp for another evaluation. Dr. Col-lipp prescribed physical therapy and scheduled Lott for another FCE to measure the success of physical therapy. After the second FCE, Lott’s only limitation, according to Dr. Collipp, was that she was unable to lift 100 pounds. Dr. Collipp found that Lott could return to work with a maximum lifting limit of 60 pounds.
¶ 5. Lott corresponded with Ann Allen, a vocational rehabilitation counselor with F.A. Richards and Associates, who advised Lott on a few occasions about available jobs in Lott’s area. Lott sent resumes and/or completed job applications to nearly all of the employers suggested by Allen, but she x'eceived no offers. She did not send a resume for one job as a metal fabricator, because she did not know what that position was and had no experience in that field. Additionally, Lott initiated her own search for employment in her own and surrounding communities.
II6. A hearing was conducted on July 6, 2005, to determine whether and to what extent Lott had any permanent disability. Lott’s medical records were admitted into evidence, as were the reports of Cannon and Dr. Collipp. David Stewart, a vocational expert, testified that Lott was able to perform some work, but only sedentary to light work. Stewart based his opinion on the first FCE, and he did not consider the FCE conducted by Dr. Collipp. Further, Stewart testified that it is his practice to help clients find employment when requested to do so, but Lott never requested his services in finding employment. Stewart also testified that the unemploy *1060 ment rate in Montgomery County was higher than the state average, and that factor limited Lott’s employment opportunities as much as her injury did.
¶ 7. After the hearing, the administrative law judge found that Lott was permanently disabled and in accordance with Mississippi Code Annotated section 71-3-17(a) (Rev.2000), required the employer to pay Lott total disability payments for a period of 450 weeks. The employer and carrier appealed to the Commission. After oral arguments, the Commission reversed the administrative law judge and found that Lott was entitled to only 200 weeks of permanent partial disability benefits, which is the maximum for her scheduled members’ injury under Mississippi Code Annotated section 71 — 3—17(c) (Rev.2000).
¶ 8. Lott appealed the Commission’s decision to the Circuit Court of Montgomery County, which affirmed the Commission. Feeling aggrieved once again, Lott appealed that decision and is now before this Court.
DISCUSSION
¶ 9. Lott argues that the circuit court erred in affirming the Commission’s decision that she was only entitled to disability benefits equivalent to 100% loss to her arm, as opposed to permanent total disability benefits, even after it was established that she was unable to find work despite 194 documented efforts to find employment.
¶ 10. The standard of review in a worker’s compensation appeal is limited. This Court must determine only whether the decision of the Commission is supported by substantial evidence. Casino Magic v. Nelson, 958 So.2d 224, 228(¶ 13) (Miss.Ct.App.2007) (citing Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999)). “The Commission sits as the ultimate finder of facts; its findings are subject to normal, deferential standards upon review.” Id. (citing Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993)). Because our review is limited, this Court “will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.” Id. (citing Westmoreland, 752 So.2d at 448(¶ 8)). We maintain this deferential standard even when we would have been persuaded to rule otherwise if we had been the fact-finder. Vance v. Twin River Homes, 641 So.2d 1176, 1180 (Miss.1994) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). Though we defer to the Commission’s findings of fact, “[w]e review the Commission’s application of the law de novo.” Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1218(¶ 30) (Miss.Ct.App.2005) (citing ABC Mfg. v. Doyle, 749 So.2d 43, 45(¶ 10) (Miss.1999)). “Certainly the legal affect [sic] of the evidence, and the ultimate conclusions drawn by an administrative tribunal from the facts ... are questions of law, especially where the facts are undisputed or the overwhelming evidence reflects them. The question depends then upon application of established legal principles to such facts.” Cent. Elec. Power Ass’n v. Hicks, 236 Miss. 378, 388-89, 110 So.2d 351, 356 (1959).
¶ 11. On appeal, Lott argues that the Commission erred in concluding that she was not entitled to permanent and total disability benefits under Mississippi Code Annotated section 71-3-17(a). Specifically, Lott argues that she carried her burden in establishing a good faith job search effort, after which, she argues, the burden shifted to the employer and carrier to establish that her job search efforts were a sham or not in good faith. Lott argues that the Commission misapplied *1061 the applicable Mississippi law, and this Court, therefore, should not defer to the Commission’s findings.
¶ 12. Mississippi Code Annotated section 71-3-17(a) and (c), in part, state:
(a) Permanent total disability: In case of total disability adjudged to be permanent, sixty-six and two-thirds percent (66-2/3%) of the average weekly wages of the injured employee, subject to the maximum limitations as to weekly benefits as set up in this chapter, shall be paid to the employee not to exceed four hundred fifty (450) weeks or an amount greater than the multiple of four hundred fifty (450) weeks times sixty-six and two-thirds percent (66-2/3%) of the average weekly wage for the state. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two (2) thereof shall constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts,
(c) Permanent partial disability: In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds percent ... of the average weekly wages of the injured employee, subject to the maximum limitations as to weekly benefits as set up in this chapter, which shall be paid following compensation for temporary total disability paid in accordance with subsection (b) of this section, and shall be paid to the employee as follows:
Member Lost Number Weeks Compensation
(1) Arm 200
The Commission determined Lott’s disability to be a permanent partial disability under Mississippi Code Annotated section 71-3-17(c). Under that subsection, Lott’s loss of use of her arm entitled her to only 200 weeks of benefits.
 ¶ 13. The Mississippi Supreme Court has held that “[wjhere an employee suffers an injury covered by the schedule in Section 71-3-17 (c) and where that injury results in a permanent loss of wage[-]earning capacity within Section 71-3-17(a), the latter section controls exclusively and the employee is not limited to the number of weeks of compensation prescribed in Section 71-3-17(c)’s schedule.” Smith v. Jackson Constr. Co., 607 So.2d 1119, 1128 (Miss.1992). The Mississippi Workers’ Compensation Act (MWCA) defines disability as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment....” Miss.Code Ann. § 71-3-3(i) (Rev.2000). Further, that “incapacity and the extent thereof must be supported by medical findings.” Id. “Factors to be considered in determining loss of wage-earning capacity include the amount of education and training that the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.” Alumax Extrusions, Inc. v. Wright, 737 So.2d 416, 422(¶ 16) (Miss.Ct.App.1998) (citing McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991)).
¶ 14. In Thompson v. Wells-Lamont Corp., 362 So.2d 638, 641 (Miss.1978), the supreme court held that once the claimant has made a prima facie case showing a good faith search for employment, the burden shifts to the employer to show that the claimant’s efforts were “a sham, or less than reasonable, or without proper diligence.” See also Sherwin Williams v. Brown, 877 So.2d 556, 559(¶ 12) (Miss.Ct.App.2004) (citing Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 828 (Miss.1991)). Further, the reasonableness of a claimant’s job search includes a “consideration of job availability and economics in the community, the claimant’s skills and background, and the nature of *1062 the disability.” Brown, 877 So.2d at 558(¶ 11) (citing Taplin, 586 So.2d at 828). The Commission made no findings regarding whether Lott had made a prima facie case of total disability and whether her employer had met its burden in showing her efforts were unreasonable. Therefore, we find “that the Commission erred as a matter of law in not employing the proper legal standard!,] and it is proper for this Court to conduct a de novo review of the Commission’s findings of fact in light of the applicable law.” Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1227 (Miss.1997).
¶ 15. The Commission considered the depressed economic conditions and shortage of jobs in Lott’s community and held this factor against Lott. The Commission found that Lott retained “significant functional abilities which, when coupled with her age, education, and past work history, drives the conclusion that she retains some earning capacity, her unsuccessful job search to date notwithstanding.” [1] The Commission further found that “[g]iven the economic realities where she lives, Ms. Lott may have to be more persistent in her effort to find work, but the medical, vocational and other evidence does not convince us that she is totally unable to earn wages as a result of the injury to her right shoulder.” The Commission’s ruling focuses on Lott’s medical disability, finding that she retains some wage-earning capacity despite her injury. However, our supreme court held in Marshall Durbin, Inc. v. Hall, 490 So.2d 877, 880 (Miss.1986), that:
The disability contemplated by the Act is an occupational disability, not a medical disability. An employee is entitled to compensation to the extent that he has been incapacitated to earn wages. That an injured employee retains substantial functional abilities in no way undercerts [sic] the conclusion that he may be totally occupationally disabled.
(Internal citations omitted).
¶ 16. Lott documented her job search. She applied for or inquired about 194 separate positions in her hometown, as well as surrounding communities. Lott also applied with her former employers that were still in existence. Lott’s attempts to find employment had differing results. Some potential employers told her they simply were not hiring. Others required lifting she would not be able to do. Still others, she says, had negative reactions when she informed them that she lost her previous job due to a workplace injury. Most of the employers Lott applied with were not hiring. Of the 194 applications or inquiries, Lott was offered one job at the Indywood Glen Personal Care Home. When Lott revealed her injury, she was informed that she would not be given the job.
*1063 ¶ 17. Lott was sixty-one years old at the time of the hearing. She has only a high school education, and her prior work experience consisted of mainly factory and manual labor, with the exception of sixteen years she spent as a teacher’s assistant. Further, Stewart, one of the vocational rehabilitation counselors, testified at the hearing that Lott had experienced a 93-95% loss of access to the job market. The evidence presented at the hearing shows that despite diligent efforts to find employment, Lott was unable to find work following her injury. Lott was questioned at the hearing about why she had not filed an application to become a teacher’s assistant. Lott responded that she had inquired about that position, but she was informed that there were no openings for a teacher’s assistant. She then applied to wTork in the school cafeteria and as a custodian; she was not hired. At the hearing before the administrative law judge, the employer/carrier questioned Lott about her being able to babysit for her grandchildren during the day, and she explained that they were old enough to do most things for themselves. Furthermore, Lott applied to work in a childcare center, but she was not offered employment. The employer/carrier also questioned Lott about a Wal-Mart application in which she limited her available hours from 7:00 a.m. until 2:00 p.m. Lott explained that the application asked the applicants to state which hours they preferred to work. In that same application, Lott indicated that she would be available to work evenings as well as Saturdays and Sundays. Lott also sought employment with the Wal-Mart stores in Winona and in Grenada; she updated those applications several times.
¶ 18. Lott’s effort in applying for 194 jobs clearly indicates a good faith, yet unsuccessful, job search. Lott made a pri-ma facie case showing a good faith search for employment. The burden then shifted to her employer to show that her efforts were not reasonable or were deceitful. Thompson, 362 So.2d at 641. Lott’s employer did not present substantial evidence to rebut the presumption established by Lott that she was permanently totally disabled.
¶ 19. We find that Lott has made a prima facie showing of permanent total disability that her employer has failed to rebut. Therefore, we render judgment that Lott is entitled, under Mississippi Code Annotated section 71-3-17(a), to compensation equal to sixty-six and two-thirds percent of her average weekly wage before her injury for a period of 450 weeks. Accordingly, we reverse the Commission’s decision and remand this cause to the Commission for a calculation of benefits to be paid to Lott, consistent with this opinion.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF MONTGOMERY COUNTY IS REVERSED AND RENDERED AS TO LOTT’S ENTITLEMENT UNDER MISSISSIPPI CODE ANNOTATED SECTION 71-3-17(a) (REV.2000) AND REMANDED TO THE COMMISSION FOR CALCULATION OF THE BENEFITS DUE TO LOTT IN ACCORDANCE WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING AND BARNES, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, ISHEE AND ROBERTS, JJ.

. See John R. Bradley and Linda R. Thompson, Mississippi Worker's Compensation § 5:28 (Thompson-West 2006), analyzing our supreme court’s holding in Barnes v. Jones Lumber Co., 637 So.2d 867 (Miss.1994). The authors note that the supreme court held that the Commission improperly applied the law of what constitutes proof of lost wage-earning capacity when it stated that the employee with a high school education “should be able to secure some type of gainful employment.” Id. The supreme court reversed the Commission's finding that Barnes should be able to find a job because the finding was not supported by evidence in the record, and Barnes had established a prima facie case of total loss of wage-earning capacity. Id. The actual availability of other work is the indicator of post injury wage-earning capacity, not the hunch that work is available. Id. Bradley and Thompson also point to McDonald v. I.C. Isaacs Newton Co., 879 So.2d 486 (Miss.Ct.App.2004), "which emphatically makes the point that unavailability of work is the test of total disability, not the extent of impairment.” Id. n. 4.