MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Barbara Ann Price left her job at Omnova Solutions, Inc., due to her inability to work after being diagnosed with carpel tunnel syndrome. Price applied for workers’ compensation benefits and was found by the administrative law judge (ALJ) to have suffered a twenty-five percent loss of wage-earning capacity. The ALJ also awarded Omnova credit for short-term and long-term benefits paid to Price. Price appealed the ALJ’s findings to the Mississippi Workers’ Compensation Commission. The Commission found that Price suffered a twenty-five percent loss of use of her right upper extremity and a twenty percent loss of use of her left upper extremity. The Commission affirmed the ALJ, awarding Omnova a credit for disability payments, and ordered that Omno-va pay penalties and interest if they did not pay Price in a timely manner. Price appeals to this Court arguing that the Commission should have found her to be permanently and totally disabled and that Omnova should not be given a credit for its payments. Omnova cross-appeals arguing that the Commission erred when it increased Price’s impairment ratings. Finding no error, we affirm the judgment of the Circuit Court of Lowndes County, which affirmed the Commission’s decision.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Omnova manufactures wall covering products and seat covers. Price began working for Omnova’s predecessor around May 1987. Price held various jobs during her time at Omnova, with each job requiring Price to use her hands, including, but not limited to, sewing, wrapping products, and inspecting materials.
 

 ¶ 3. On or about February 6, 2000, Price suffered an injury to her right and left upper extremities. Price described the injury as numbness, coldness, tingling, and swelling in both of her hands, as well as the inability to hold onto items. Price went to the emergency room for treatment on her hands, and through a series of referrals, she ended up being examined Dr. Kurt Thorderson, an orthopedic surgeon. Dr. Thorderson diagnosed Price with carpel tunnel syndrome on both of her hands, with the right hand being worse than the left hand.
 

 
 *107
 
 ¶ 4. On June 9, 2000, Dr. Thorderson performed surgery on Price’s right hand and wrist.
 
 [1]
 
 Price refused to allow Dr. Thorderson to operate on her left hand. On September 11, 2000, Dr. Thorderson released Price to return to work, recommending she work four hours per day for two weeks, and begin working a full day on or about September 25, 2000. Price returned to work, but only for two days, claiming the pain in her hands was too great. Dr. Thorderson opined that Price had reached maximum medical improvement on March 15, 2001, and assigned Price a ten percent impairment rating to both her right and left upper extremities and an additional seven percent impairment to her right upper extremity due to the ulnar nerve damage. Dr. Thorderson placed permanent work restrictions on Price of not lifting more than twenty pounds and no highly repetitive use of her hands.
 

 ¶ 5. Due to her injury and the restrictions placed on her, Price was unable to perform her duties at Omnova. Omnova recommended that Price apply for short-term and long-term benefits, which Omno-va paid for fifty-two weeks and eighty-two weeks, respectively.
 

 ¶ 6. Price filed her petition to controvert on October 19, 2001. The ALJ ruled that Price had suffered a twenty-five percent loss in wage-earning capacity. The ALJ also ruled that Omnova should be given a credit for the short-term and long-term benefits paid to Price. Price appealed to the Commission, which found that Price suffered a twenty-five percent loss of wage-earning capacity to her right arm and a twenty percent loss to her left arm. The Commission also ordered Omnova to pay Price permanent partial disability payments for ninety weeks. The Commission affirmed the ALJ, awarding Omnova credits for the benefits paid to Price. Lastly, the Commission ordered that Omnova be assessed penalties and interest if it failed to pay Price in a timely manner. Price appealed to the circuit court which affirmed the Commission’s decision. Aggrieved, Price and Omnova appeal.
 

 STANDARD OF REVIEW
 

 ¶ 7. The Commission is the finder of fact, and this Court will defer to the findings of the Workers’ Compensation Commission when those findings are supported by substantial evidence.
 
 Jones v. S. Healthcare Agency,
 
 930 So.2d 1270, 1272(¶ 10) (Miss.Ct.App.2006). “We will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.”
 
 Levi Strauss & Co. v. Studaway,
 
 930 So.2d 481, 484(¶ 10) (Miss.Ct.App.2006). If the Commission’s decision and findings of fact are supported by substantial evidence, then we are bound by them even if we as the fact-finder would have been convinced otherwise.
 
 Spann v. Wal-Mart Stores, Inc.,
 
 700 So.2d 308, 311(¶ 12) (Miss.1997).
 

 DISCUSSION
 

 I. WHETHER THE COMMISSION ERRED IN FINDING THAT PRICE SHOULD ONLY BE PAID PERMANENT PARTIAL DISABILITY BENEFITS.
 

 ¶ 8. Price argues the Commission erred by only awarding her permanent partial disability benefits and not permanent total disability benefits. Price claims
 
 *108
 
 that her inability to return to her pre-injury job, as well as Omnova’s reluctance to rehire her, is prima facie evidence of her total disability.
 

 ¶ 9. Price asserts that
 
 McDonald v. I.C. Isaacs Newton Co.,
 
 879 So.2d 486 (Miss.Ct.App.2004) is authoritative on this issue. In
 
 McDonald,
 
 this Court found that permanent total disability benefits should have been awarded to a seamstress suffering from carpel tunnel syndrome.
 
 Id.
 
 at 491 (¶¶ 22, 24). In its analysis, the supreme court applied the ruling in
 
 Meridian Professional Baseball Club v. Jensen,
 
 828 So.2d 740 (Miss.2002), which created a rebuttable presumption of total occupational loss where the claimant is unable to earn the same wages post-injury as they were pre-injury.
 
 McDonald,
 
 879 So.2d at 491(¶ 23). The court in
 
 McDonald
 
 found the employer failed to rebut this presumption; thus, the seamstress should have been awarded permanent total disability.
 
 Id.
 
 at 491 (¶¶ 22, 24).
 

 ¶ 10. Price points to her wages pre-injury and the wages of jobs available after her injury as proof that she should have received permanent total disability benefits. The parties stipulated that Price was earning $921.87 per week before her injury. The vocational expert reports listed jobs with ranges varying from $5.15 per hour to $8 per hour. This translates into approximately $320 per week, at best.
 
 [2]
 
 Price argues these vastly differing values prove that she has suffered a permanent total disability.
 

 ¶ 11. Our court has an extensive record of determining whether the claimant’s pre-injury wage-earning capacity compared with the post-injury earning capacity is sufficient to support a finding of permanent total disability. In
 
 McDonald,
 
 879 So.2d at 491 (¶¶ 22, 24), this Court ruled that a claimant’s inability to earn the same wages prior to the injury supports a finding of permanent total disability. On the other hand,
 
 McDowell v. Smith,
 
 856 So.2d 581, 585(¶ 12) (Miss.Ct.App.2003) held that “[t]he post-injury capacity to earn wages at other employment, even at a diminished level, is enough to defeat a claim for permanent total disability.” This Court recently clarified this paradox by ruling that “the better rule is that the ability to earn post-injury wages,
 
 even significantly diminished post-injury wages,
 
 defeats a claim of permanent total disability.”
 
 Hill v. Mel, Inc.,
 
 989 So.2d 969, 972(¶ 14) (Miss.Ct.App.2008) (emphasis added).
 

 ¶ 12. Based on our recent ruling, we find that Price’s ability to earn post-injury wages, although at a diminished capacity, is sufficient to support the Commission’s finding of only permanent partial disability benefits. The vocational expert testified that Price would be able to obtain employment after her injury. The vocational expert provided reports from May 2002 to July 2004 that listed various jobs available in Price’s area that were tailored to her abilities and restrictions. Moreover, the health and benefits manager at Omnova testified that overtime was calculated into Price’s average weekly wage, and that Om-nova no longer allows its employees to work overtime. Given this development at Omnova, Price may only receive wages at Omnova that are close to the wages offered by the jobs listed by the vocational expert; thus, the wages would not be at a diminished capacity. Nevertheless, given our recent ruling in
 
 Hill,
 
 Price’s ability to earn post-injury wages defeats her claim for permanent total disability.
 

 ¶ 13. In addition to the ability to earn post-injury wages, courts sometimes look at the reasonableness of the claimant’s
 
 *109
 
 post-injury job search in determining whether they are entitled to permanent total disability benefits. This Court stated that:
 

 In assessing the reasonableness of a claimant’s job search, relevant factors for consideration are: “the economic and industrial aspects of the local community, the jobs available in the community and surrounding area, the claimant’s general educational background, including work skills, and the particular nature of the disability for which compensation is sought.”
 

 Lifestyle Furnishings v. Tollison,
 
 985 So.2d 352, 360(¶ 25) (Miss.Ct.App.2008). Omnova’s vocational expert testified that Price is highly employable, given her age, education, work background, and work restrictions. However, Price has been lax in her job search. Price admitted she has not looked for work since June 2002. She claims to have submitted applications to various employers in her area, some that the vocational expert provided, but she provided no evidence to support these assertions. The vocational expert testified that he could confirm that Price had applied to only three employers out of the approximately twenty that he provided. Price testified that she now works for free at her brother’s barbeque stand. The ALJ and Commission were both suspicious of Price’s alleged job search. The Commission characterized her efforts as “questionable” and “marginal.”
 

 ¶ 14. The Commission’s assessment of Price’s quest for employment is supported by the evidence. As previously stated, she has not actively looked for work since June 2002. Price did not sufficiently pursue any of the available jobs provided to her by the vocational expert. Even more egregious, Price was informally offered two jobs after her injury, but she declined the invitations because she “did not want to take a step down.” Strangely enough, Price has the ability to help her brother make barbeque sandwiches in his restaurant, yet she cannot bear to perform any work involving the use of her hands. Price’s ability to earn post-injury wages, coupled with her failure to adequately seek employment post-injury, supports the Commission’s finding that she is only entitled to permanent partial disability benefits. Accordingly, this issue is without merit.
 

 II. WHETHER THE COMMISSION ERRED IN ITS IMPAIRMENT-RATINGS FINDING.
 

 ¶ 15. Price appeals the Commission’s finding on her impairment rating, arguing that she has suffered a greater loss. However, Omnova cross-appeals arguing that the Commission erred when it reversed and increased the impairment rating assigned by the ALJ.
 

 ¶ 16. The ALJ found that Price suffered a twenty-five percent loss of wage-earning capacity. The Commission reversed the ALJ’s finding, ruling that Price had suffered a twenty-five percent loss to her right upper extremity and a twenty percent loss to her left upper extremity. Despite this increase, Price contends the Commission should have found a higher impairment rating or, in the alternative, a total loss. Price argues that the Commission merely estimated her loss and assigned an impairment rating accordingly.
 

 ¶ 17. On the other hand, Omnova asserts that the Commission erred in its impairment-ratings finding. Dr. Thorder-son diagnosed Price with a total impairment of seventeen percent to her right arm and a ten percent impairment to her left arm. Omnova argues that Price’s award should be limited to Dr. Thorder-son’s assessment.
 

 ¶ 18. The Commission is not confined to medical testimony in determin
 
 *110
 
 ing the percentage of loss to be assigned to an injury.
 
 Malone & Hyde of Tupelo, Inc. v. Kent,
 
 250 Miss. 879, 882, 168 So.2d 526, 527 (1964). Lay testimony may be considered to supplement medical testimony but, “[t]he probative value of any witnesses] testimony is for the fact-finder to determine.”
 
 R.C. Petroleum, Inc. v. Hernandez,
 
 555 So.2d 1017, 1021 (Miss.1990). Factors which this Court has considered in determining loss of wage-earning capacity include: the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances.
 
 Malone,
 
 250 Miss. at 881, 168 So.2d. at 527. In other words, the determination should be made only after considering the evidence as a whole, and it is not limited to the percentage of physical or medical disability.
 
 Piggly Wiggly v. Houston,
 
 464 So.2d 510, 512 (Miss.1985).
 

 ¶ 19. Price, her son, and her brother all testified at the hearing before the Commission. Price testified that her hands still go numb and that it is painful for her to use them. She further testified that she still drops items when trying to lift them. Her testimony was corroborated by her brother and son. Price’s brother stated that she drops things while working in his business and has trouble lifting items. Price’s son testified that she has trouble lifting and holding on to objects, and she is constantly dropping items after lifting them. This evidence supports the Commission’s increase in Price’s impairment rating to twenty-five and twenty percent, respectively.
 

 ¶ 20. However, the testimony simultaneously precludes a finding of a total loss of use of Price’s hands. Omnova’s vocational expert testified that Price is highly employable. Throughout these proceedings, the vocational expert has listed a multitude of jobs that were available and were within Price’s skill set and limitations. Moreover, Price testified that she is still able to use her hands. She still performs household chores involving the use of her hands such as folding clothes, and she continues to help her brother prepare barbeque sandwiches in his restaurant, which obviously requires Price to use her hands. Given these facts, Price has not experienced a total loss of use of her hands.
 

 ¶ 21. Accordingly, the Commission’s assignment of impairment rating is supported by the substantive evidence and was not erroneous.
 

 III. WHETHER THE COMMISSION ERRED IN GRANTING OMNOVA CREDIT FOR THE BENEFITS PAID TO PRICE.
 

 ¶ 22. The Commission granted Omnova credit for the short-term and long-term disability benefits it paid to Price. The determination of whether an employer should be granted a credit for nonstandard payments turns on whether the payments were intended as advanced compensation payments.
 
 [3]
 

 ¶ 23. Price argues Omnova failed to present any conclusive evidence that the advanced payments by Omnova were in lieu of compensation payments. The ALJ and the Commission disagreed with Price, and both awarded Omnova credit for the short-term and long-term benefits paid to Price while she was unable to work.
 

 
 *111
 
 ¶ 24. Omnova’s health and benefits manager testified that they paid Price $228.84 bi-weekly for 82 weeks (February 12, 2002-September 23, 2003) in long-term benefits, totaling $9,382.44. Additionally, they paid $54.18 bi-weekly for 52 weeks (February 10, 2000-February 9, 2001) in short-term benefits, for a total of $1,408.68. These benefits were in addition to the $42,190.73 in temporary total disability payments and $18,867.78 in medical expenses. She also testified these benefits were used to replace the worker’s salary while disabled, subject to a physician certifying the claimant was actually disabled. Omnova calculated these numbers based on Mississippi compensation law and the employee’s current salary. From this testimony, it is concluded that the Commission’s finding that Omnova’s payments were advanced compensation payments is supported by the evidence. Thus, this issue is without merit.
 

 IV. WHETHER OMNOVA SHOULD BE ASSESSED PENALTIES AND INTEREST.
 

 ¶ 25. The Commission ruled that Omno-va should be assessed penalties and interests if any compensation is not paid in a timely manner.
 

 ¶ 26. Mississippi Code Annotated section 71-3-37(5) and (6) (Rev.2000) mandates a ten percent penalty on any unpaid compensation benefits due prior to an award and a twenty percent penalty on compensation benefits due and unpaid following an award unless review of the compensation order making such award is had.
 

 ¶ 27. Omnova should not be assessed a ten percent penalty as there were no unpaid compensation benefits prior to the ALJ’s award. Omnova paid all temporary and permanent partial benefits that had accrued at the time of the ALJ’s award through the credits they received from the temporary total disability, short-term, and long-term benefits payments previously made to Price. Additionally, a twenty percent penalty should not be levied on Omnova. If the Commission’s award is appealed, the due date of payment becomes effective when the judgment on appeal becomes final.
 
 See
 
 V. Dunn, Mississippi Workermen’s Commission, § 301 (3rd ed.1990). Thus, Omnova should only be assessed penalties and interest if it fails to make benefit payments within the applicable period of time from the date of this judgment. Accordingly, this issue is without merit.
 

 ¶ 28. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
 

 LEE, P.J., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY. GRIFFIS, J., NOT PARTICIPATING.
 

 [1]
 

 . Dr. Thorderson testified that he performed a right carpel tunnel release and a right ulnar nerve neurolysis.
 

 [2]
 

 . ($8 per hour x 8 hours per day) x 5 days = $320.
 

 [3]
 

 . Mississippi Code Annotated section 71 — 3— 7(d) (Rev.2000) permits a credit for payment made to pre-existing physical handicap, disease, or lesion. Also, Mississippi Code Annotated section 71-3-53 (Rev.2000) allows a credit for payments made when a case reopen?.